UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

EARL ROBERT KRANZ,

                Petitioner,

                                        Case No. 2:22-cv-6

v.

                                        Hon. Hala Y. Jarbou

CONNIE HORTON,

                Respondent.

_____/

**<u>OPINION</u>**

     This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Earl Robert Kranz is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On July 21, 2016, following a seven-day jury trial in the Allegan County Circuit Court, Petitioner was convicted of six counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(a), one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c(1)(a), and one count of aggravated indecent exposure, in violation of Mich. Comp. Laws § 750.335a(2)(b). On August 23, 2016, the court sentenced Petitioner to concurrent prison terms of 54 months to 15 years for the CSC-II conviction, 25 to 40 years for each CSC-I conviction, and 8 months and 15 days for the aggravated indecent exposure conviction.

     On January 10, 2022, Petitioner filed his habeas corpus petition raising the following six grounds for relief:

     I.       The trial court abused its discretion in disallowing relevant testimony about animosity by [Petitioner's] step-daughter towards him which provided a motive for the false allegations made by the complaining witness, [Petitioner's] daughter.

II.     The trial court abused its discretion in refusing to approve funds for the appointment of a defense expert.  This action denied Defendant due process, the right to present a defense, and a fundamentally fair trial.  US Const Am XIV.

III.    The trial court abused its discretion by admitting expert testimony from an examining physician that diagnosed the complainant with probable pediatric sexual abuse despite not having made any physical findings of sexual abuse to support the conclusion, such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury, the error was plain or obvious and affected [Petitioner's] substantial rights, and seriously affected the integrity of his trial, and reversal is required.

IV.     The trial court abused its discretion by admitting expert opinion testimony under MRE 704 that vouched for the complainant's credibility.  A child abuse expert testified about delayed disclosure and recantation behaviors exhibited by children who have been victims of sexual abuse, the complainant was not diagnosed so the danger of permitting an inference that as a result of certain behavior, sexual abuse in fact occurred when evidence of the syndrome is not a conclusive finding of abuse, such testimony improperly vouches for the complainant's veracity, the error was plain or obvious and affected [Petitioner's] substantial rights, and seriously affected the integrity of his trial, and reversal is required.

V.      The prosecution committed error where she knew of admissible evidence favorable to [Petitioner], but deliberately went to great lengths to make sure the jury would not hear the favorable evidence (there may be judge shopping here).  These actions denied [Petitioner] his due process rights under the Fourteenth Amendment of the United States Constitution, and denied [Petitioner] a meaningful opportunity to present a complete defense which denied [Petitioner] a fair trial, and reversal is required.

VI.     [Petitioner] was denied a fair trial by ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendment(s) of the United States Constitution, where counsel failed to produce relevant and admissible evidence, of which she had knowledge, to establish the proper foundation for [Petitioner's] theory of the case.  The deficient performance unfairly prejudiced [Petitioner's] right to present his defense, and was not sound trial strategy, and fell below an objective standard of reasonableness, and reversal is required.

(Pet., ECF No. 1, PageID.19–20.) Respondent asserts that Petitioner's grounds for relief are meritless.[1] (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

## I.      Factual Allegations and Procedural History

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> This appeal arises from [Petitioner's] retrial on charges related to the sexual abuse he perpetrated against the victim when she was between the ages of 10 and 11 years old.  At trial, the victim testified in detail about the sexual abuse that [Petitioner] perpetrated against her on a nearly daily basis from 2008 to 2009.  The victim testified that the sexual abuse occurred at [Petitioner's] home, at a local health clinic in Exam Room 1, and at another location in an office.  During the police investigation, the victim identified places in Exam Room 1 that possibly contained evidence.  Police cut strips of the carpeting out of the room, and expert testimony established that some of the carpeting strips contained seminal fluid and sperm cells, and that [Petitioner's] DNA matched the DNA profile of the sperm cells. [Petitioner] testified at trial and denied abusing the victim.  Both [Petitioner] and his former wife testified that they had sexual relations in Exam Room 1 during the time that the victim claimed that she was abused.

*People v. Kranz*, No. 335416, 2018 WL 2944190, at *1 (Mich. Ct. App. June 12, 2018).

---

[1] Respondent also contends that some of Petitioner's grounds for relief are unexhausted and/or procedurally defaulted. (ECF No. 7, PageID.57–60.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

On May 2, 2011, Petitioner was convicted by an Allegan County jury of six counts of first-degree criminal sexual conduct (CSC-I), one count of second-degree criminal sexual conduct (CSC-II), and one count of aggravated indecent exposure. (ECF No. 8-5, PageID.394–395.) The trial court sentenced Petitioner to concurrent terms of 25-40 years for the CSC-I convictions, 54-180 months for the CSC-II conviction, and 8 and a ½ to 2 years for the aggravated indecent exposure conviction. (ECF No. 8-6.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the following claims: (1) trial counsel was ineffective for failing to elicit testimony and use evidence that would have demonstrated that the prosecution's "other acts" witnesses were incredible; (2) the trial court violated Petitioner's confrontation rights by allowing his accuser to testify through the use of a two-way screen, and counsel was ineffective for failing to object to this procedure; and (3) the prosecutor erred by forcing Petitioner and his wife to comment on the credibility of the prosecution's witnesses. (ECF No. 9-16, PageID.4105.) In an order entered on April 12, 2012, the court of appeals remanded the matter to the trial court for an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1993), and a determination as to whether counsel was ineffective for "fail[ing] to elicit testimony and present evidence which would have demonstrated that the other acts witnesses were incredible." (ECF No. 9-15, PageID.3614.)

The trial court conducted the *Ginther* hearing on June 21, 2012, at which Petitioner's appointed trial counsel testified. (ECF No. 8-7.) In an opinion and order entered on December 13, 2012, the trial court granted Petitioner's motion for a new trial. (ECF No. 9-16, PageID.4028–4055.) In his opinion, Judge Cronin summarized the following documents of which trial counsel was aware and did not seek to admit during Petitioner's trial:

4

- A 1992 court order from St. Joseph County, Indiana, in which a probate judge concluded that there was no evidence that Petitioner had molested his daughter, R.K.;

- A 1994 Ionia County, Michigan, court action and report by Dr. Charles Laufer, who concluded that R.K. showed no signs of being a sexually abused child, that Petitioner had no signs consistent with being a sex offender, and that r.K. had been "coached" by other relatives to make accusations against her father;

- A 1995 Ionia County court action and DHS documents concluding that R.K. had falsely accused Petitioner of molesting her;

- A 1996 Indiana divorce decree noting that full custody of R.K. and her younger brother was awarded to Petitioner;

- A 2003 psychological evaluation of J.L. conducted by Dr. Don Boyd, in which Dr. Boyd described J.L. as "quite manipulative"; and

- 2003 child protection cases filed against Petitioner and his current wife in Kent County, Michigan, which included documents concluding that there was no indication of sexual abuse of the children by Petitioner and that J.L. had a history of not telling the truth and fabricating abuse allegations in multiple counties.

(*Id.*, PageID.4034–4031.)

Judge Cronin noted that J.L.'s and R.K's credibility as witnesses during Petitioner's trial was "vitally important," especially given the complainant's testimony about "wanting to 'send the defendant away' for what he had done to 'other people' as well as her." (*Id.*, PageID.4045–4046.) Judge Cronin concluded that trial counsel was not ineffective for not offering the 1992 Indiana court order at trial, but that the remaining documents were "rich with facts, judicial findings, and a variety of material expert opinions which would obviously have great importance and relevance to any decision maker charged with evaluating the credibility of [J.L.] and [R.K.]." (*Id.*, PageID.4050–4051.) Given that, he wrote, trial counsel was ineffective for failing to offer these documents as evidence at trial, preventing the "jury from fully and fairly evaluating the credibility of the other acts witnesses." (*Id.*, PageID.4054.) Although Judge Cronin granted Petitioner's

motion for a new trial, he stayed further action "pending further appellate review." (*Id.*, PageID.4055.)

Subsequently, the court of appeals vacated the trial court's grant of a new trial and affirmed Petitioner's convictions and sentences. *See People v. Kranz*, No. 304853, 2013 WL 5338523, at *1 (Mich. Ct. App. Sept. 24, 2013). The court of appeals noted that the order for a new trial was "outside the scope of this Court's remand order." *Id.* The court of appeals concluded further that Petitioner had failed "to satisfy his burden of establishing that trial counsel's performance fell below an objective standard of reasonableness with regard to his cross-examination of R.K. and J.L. *Id.* at *2. The court of appeals indicated that Petitioner had failed to demonstrate that the documents described above "would have been admissible, either as substantive or impeachment evidence, such that counsel should have sought to admit the evidence instead of merely attempting to cross-examine the witnesses.[2] *Id.* The court of appeals also rejected Petitioner's claims regarding the trial court permitting the complainant to testify behind a screen and his claims of prosecutorial misconduct. *Id.* at *3–6.

Petitioner then sought leave to appeal to the Michigan Supreme Court. By order entered on April 24, 2014, the supreme court vacated the portion of the court of appeals' opinion "addressing ineffective assistance of counsel as it relates to the presentation of a defense," and remanded the matter to the court of appeals for further proceedings. *People v. Kranz*, 844 N.W.2d 724, 723–24 (Mich. 2014). The supreme court directed the court of appeals to remand the matter to the trial

---

[2] Judge Kelly dissented from the majority's conclusion regarding Petitioner's ineffective assistance claim, noting that he was "convinced that the trial court erred when it limited [Petitioner's] lawyer's ability to cross-examine the prosecution's similar acts witnesses and erred when it imposed improper conditions on [Petitioner's] lawyer before it would permit him to question [Petitioner] about prior proceedings." *Kranz*, 2013 WL 5338523, at *7 (Kelly, J., dissenting). He noted further that "[Petitioner's] lawyer then compounded the trial court's error by failing to present to the trial court the documentary proof that the trial court demanded." *Id.*

court for further findings because the trial court "failed to complete its duties under the April 12, 2012 order of the Court of Appeals . . . because it did not determine whether the evidence that it considered in finding ineffective assistance by trial counsel was admissible." *Id.* at 724. The supreme court noted further:

> Independent of any question regarding the documents' admissibility, the trial court may also consider whether it would have permitted further cross-examination of witnesses if counsel had provided the documents produced at the hearing as a foundation for his questions, and, if so, whether that line of questioning would have created a reasonable probability of a different outcome under *People v. Armstrong,* 490 Mich. 281, 806 N.W.2d 676 (2011).

*Id.* The supreme court noted that the trial court "shall make findings of fact and legal determinations on the record, but shall not grant or deny a motion for a new trial." *Id.*

Upon remand from the court of appeals, the trial court held hearings regarding the issue of ineffective assistance of trial counsel on August 22, 2014, and October 17, 2014. (ECF Nos. 8-9 and 8-10.) Subsequently, the court of appeals reversed Petitioner's convictions and remanded the matter for a new trial, concluding that Petitioner had received ineffective assistance of counsel. *See People v. Kranz*, No. 304853, 2015 WL 557993, at *1 (Mich. Ct. App. Feb. 10, 2015). In coming to that conclusion, the court of appeals concluded that the documentary evidence noted above would have been admissible at trial, and that counsel's failure to seek admission of those documents prejudiced Petitioner because the documents would have "'cast very significant doubt upon the credibility of [J.L. and R.K.],' whose testimony was of substantial importance to the prosecution's case." *Id.* at *3.

Jury selection for Petitioner's retrial began on July 12, 2016. (Trial Tr. I, ECF No. 9-5.) Over the course of several days, the jury heard testimony from numerous witnesses, including an expert in the area of child sexual assault diagnosis and treatment, an expert regarding the disclosure of child sexual abuse, the complainant, Petitioner's ex-wife, Petitioner's pastor, and Petitioner

himself. (Trial Tr. II, III, IV, and V, ECF Nos. 9-6, 9-7, 9-8, and 9-12.) Notably, the prosecution did not present "other acts" evidence, i.e, testimony from R.K. and J.L. On July 21, 2016, the jury reached a guilty verdict, finding Petitioner guilty of six counts of CSC-I, one count of CSC-II, and one count of aggravated indecent exposure. (Trial Tr. VII, ECF No. 9-10, PageID.2891–2892.) Petitioner appeared before the trial court for sentencing on August 23, 2016. (ECF No. 9-11.)

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the following claims for relief: (1) the trial court erred by not allowing testimony about J.L.'s animosity towards him because the animosity provided a motive for false allegations made by the accuser; and (2) the trial court abused its discretion in denying funds for the appointment of a defense expert. (ECF No. 9-20, PageID.5363.) On June 12, 2018, the court of appeals affirmed Petitioner's convictions and sentences. *Kranz*, 2018 WL 2944190, at *1. On March 5, 2019, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Kranz*, 923 N.W.2d 263 (Mich. 2019).

Petitioner then returned to the trial court to file a motion for relief from judgment pursuant to Michigan Court Rule 6.500, in which he raised the four grounds set forth as habeas grounds III, IV, V, and VI *supra*. In an order entered on August 13, 2020, the trial court denied his motion. (ECF No. 9-13.) On February 24, 2021, and October 8, 2021, respectively, the court of appeals and supreme court denied Petitioner's applications for leave to appeal. (ECF No. 9-14, PageID.3174; ECF No. 9-23, PageID.5784.) This § 2254 petition followed.

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.   Ground I—Exclusion of Testimony

In habeas ground I, Petitioner contends that the trial court abused its discretion by "disallowing relevant testimony about animosity by [Petitioner's] step-daughter towards him which provided a motive for the false allegations made by the complaining witness, [Petitioner's] daughter." (Pet., ECF No. 1, PageID.19.)

The court of appeals rejected Petitioner's claim on direct appeal, stating:

At trial, the victim's brother JK testified that on one evening in November 2009, the victim disclosed to him that [Petitioner] sexually abused her. JK testified that the victim then went across the hall into another room and disclosed the abuse to JL. According to JK, JL ran downstairs and became involved in a scuffle with [Petitioner]. During his testimony, defense counsel asked JK, "At this time in your life from what you recall, is it safe to say that [JL] hated [Petitioner]?" The prosecution objected, and the trial court upheld the objection on relevance grounds.

During [Petitioner's] testimony, defense counsel asked [Petitioner] if JL had recently come to live at the home when the victim disclosed the abuse, and she asked [Petitioner] whether JL previously lived elsewhere. Defense counsel articulated the rationale for the questioning as follows:

Your Honor all we intended to offer for the jury is to ask Mr. Kranz if he had objected to having [JL] move back into the home at that time. And, we believe that all he would have said is yes, he objected, they did not get along. That's all the further I intended to take it your Honor.

* * *

> It's relevant because our theory of this case is that a story was made up on that evening in November by [the victim], [JL] had only been back in the house perhaps two weeks when that trouble started. Now we believe the jury can take from it what it wants to from that, they can choose to believe that it had something to do with it or not, but we believe that was more properly for the jury.

The trial court excluded the proposed testimony, explaining as follows:

> I thought that the line of questioning with [defense counsel] suggested [sic] might inevitably bring [JL] in here as a rebuttal witness and that would open the door to reasons why she might have a difficult relationship with [Petitioner], and that would open the door to the prior bad acts testimony that the prosecutor decided well in advance of this trial she would not be eliciting, and that would then complicate the proofs considerably.

> So, I fundamentally ruled that that line of questioning [defense counsel] was suggesting was irrelevant and wouldn't be allowed. So, if anybody wants to supplement the record with their own statements you're welcome to do so.

On appeal, [Petitioner] argues that the trial court abused its discretion in excluding the testimony of JK and [Petitioner]. [Petitioner] argues that the evidence was relevant and tended to show that JL had animosity toward [Petitioner], which, in turn, was relevant to show that the victim was motivated to fabricate allegations against [Petitioner]. This argument lacks merit.

MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even if evidence is relevant under MRE 401, MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In this case, JK's testimony that JL hated [Petitioner] was not admissible under MRE 401. Evidence that JL hated [Petitioner] would not have had any tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence that JL allegedly hated [Petitioner] did not tend to show that the victim fabricated allegations against [Petitioner]. There was no evidence to show how JL's hatred would motivate the victim to make false allegations about sexual abuse that [Petitioner] perpetrated upon her. While [Petitioner] argues that the evidence would have been relevant to prove that the victim fabricated the allegations, [Petitioner] fails to show a nexus between JL's alleged hatred and the

12

victim's alleged fabrication. There was no evidence to connect JL's alleged state of mind to the victim. [Petitioner] did not call JL as a witness; therefore, the evidence was not admissible for impeachment purposes.

Moreover, there was no evidence to show that there was a foundation for JK's testimony. At trial, [Petitioner] argued that JK's testimony was admissible opinion testimony under MRE 701, which provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In this case, [Petitioner] fails to articulate how JK's opinion that JL hated defendant was "rationally based on the perception of the witness." There was nothing in the record and [Petitioner] did not make an offer of proof to support that JK had a rational basis for testifying as to the mental state of another non-testifying witness. Thus, JK's proffered testimony would not have been helpful to a clear understanding of his testimony or to the determination of a fact in issue at trial. See MRE 701.

Moreover, even assuming arguendo that JK's testimony was relevant, we note that the trial court could have held that the evidence was inadmissible under MRE 403. Specifically, if JK testified to JL's state of mind toward [Petitioner], this would have opened the door to questions about JL's past allegations of abuse against [Petitioner]. This other-acts evidence was not admitted in this trial, so the trial court had reason to take precaution to prevent the jury from learning of the evidence. Specifically, whether JK had a rational perception of JL's feelings toward [Petitioner] naturally would have raised the question of why JL hated defendant. Inquiring into why JL hated [Petitioner] would have potentially led to other-acts evidence being disclosed to the jury. Therefore, the trial court could have concluded that the probative value of JK's testimony was "substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues." MRE 403. Thus, the trial court could have excluded the evidence under MRE 403. *See People v. Lyon*, 227 Mich. App. 599, 612–613; 577 N.W.2d 124 (1998) ("This Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason.").

Similarly, the trial court did not err in excluding [Petitioner's] proffered testimony that he did not want JL to move back into the family home. This testimony would have shown that [Petitioner] and JL did not get along. However, as discussed above, there was no correlation between [Petitioner's] poor relationship with JL and the victim. There was nothing in the record to show a nexus between the victim and the animosity that JL had toward [Petitioner]. JL was not a witness at trial, and there was no other evidence or offer of proof to connect the victim's allegations to JL's animosity. Thus, the evidence was not relevant under MRE 401.

> Moreover, assuming that the evidence was relevant, [Petitioner's] testimony would have opened the door to questions about [Petitioner's] relationship with JL, which in turn, may have exposed the jury to inadmissible other-acts evidence. The prosecution did not introduce the other-acts evidence in this case, and JL did not testify at trial. The trial court could have concluded that allowing [Petitioner] to testify about his poor relationship with JL would open a line of questioning that led to reference of the other-acts evidence. Thus, the trial court could have concluded that the probative value of [Petitioner's] testimony was substantially outweighed by the danger of unfair prejudice or confusion of the issues under MRE 403. In short, the trial court did not abuse its discretion in excluding [Petitioner's] testimony.

*Kranz*, 2018 WL 2944190, at *1–3.

To the extent that Petitioner asserts that the state courts erred in excluding the testimony regarding J.L.'s animosity toward Petitioner under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The court of appeals' determination that testimony regarding J.L.'s animosity toward Petitioner was not admissible under the Michigan Rules of Evidence is, therefore, axiomatically correct on habeas review.

Even an axiomatically correct determination that testimony was admissible or inadmissible under state law does not preclude a determination that the admission or exclusion of the evidence was so fundamentally unfair that it violated the right to due process. "Generally, state-court

evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue").

In his reply brief, Petitioner suggests that the exclusion of such testimony violated his right to present a defense. (ECF No. 13, PageID.5949.) According to Petitioner, his defense was hindered because he was unable to present evidence that J.L. "was the one who initiated the complaint against the Petitioner, and Petitioner's entire defense relied upon testimony which would support the defense that [she] hated the Petitioner and had tendencies to fabricate accusations." (*Id.*)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution

guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted). A criminal defendant, however, "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). Rather, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes,* 547 U.S. at 326–27 (internal alterations and quotation marks omitted). Thus, evidentiary rules abridge the right to a meaningful opportunity to present a defense if such rules both "infring[e] upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer,* 523 U.S. 303, 308 (1998).

Petitioner fails to meet his burden of demonstrating that the evidentiary rulings excluding testimony regarding J.L.'s animosity infringed upon his due process rights. Contrary to Petitioner's assertion, his "entire defense" did not rely upon testimony that J.L. hated him and was the one who initiated the complaint against him. Rather, his focus was the victim's own handwritten recantation wherein she explained that she had made the false accusations because Petitioner was yelling at her brother and she wanted to help her brother by getting Petitioner out of the house. (Trial Tr. VI, ECF No. 9-9, PageID.2384–2385.) The strained implication that the older sister's animosity toward her father prompted the victim's false disclosures pales in comparison to the victim's own handwritten and signed admission. Furthermore, whatever animus the sister may have harbored for Petitioner, or vice versa, there was no evidence offered then, or now, that the animus prompted the disclosure. Indeed, as the trial judge noted, admission of testimony regarding J.L.'s relationship with Petitioner could well have "open[ed] the door to the prior bad acts testimony that the

prosecutor decided well in advance of this trial she would not be eliciting." (*Id.*, PageID.2788.) It may well have been Petitioner's intention to bring back in the "prior bad acts" because experience in the prior proceedings suggested the disclosures regarding those acts were easier to portray as incredible.

But, even now, Petitioner offers no evidence to connect the animosity between him and the sister to the victim's disclosure. Because there is no unfettered right to offer evidence, and because Petitioner has not demonstrated that the exclusion of testimony regarding the sister's animosity towards him violated his right to present a defense, Petitioner cannot demonstrate that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

### B.      Ground II—Denial of Funds for a Defense Expert

Petitioner's second ground for relief is that the trial court abused its discretion by "refusing to approve funds for the appointment of a defense expert." (Pet., ECF No. 1, PageID.19.) Petitioner contends that the trial court's refusal to do so violated his due process rights and his right to present a defense. (*Id.*)

The court of appeals rejected Petitioner's claim in the following thorough discussion:

On May 20, 2016, defense counsel moved for public funding for expert witnesses Dr. Andrew Barclay, Ph.D., and Dr. Julie Howenstine, D.V.M.[1] Defense counsel indicated that Dr. Barclay would testify about delayed disclosure, forensic interviewing, and memory in child sexual abuse cases. Dr. Howenstine would testify to DNA methods and procedures used by the police in this case. At a motion hearing, the trial court agreed to provide funding for five hours of preliminary investigation on the case for each of the experts in the amount of $88 per hour.

On June 23, 2016, the trial court held another motion hearing regarding [Petitioner's] request for expert witnesses. At that hearing, defense counsel indicated that both Dr. Barclay and Dr. Howenstein declined the offer to conduct five hours of investigative research on the case at the proposed $88 per hour. Defense counsel indicated that she did not need Dr. Howenstein to proceed to trial. When the trial court questioned defense counsel regarding why [Petitioner] could

17

not safely proceed to trial without the testimony of Dr. Barclay, defense counsel responded:

> Your Honor, I cannot tell you that I don't feel that we can safely proceed, I think it would assist the triers of fact but at this point I'm not afraid to proceed and don't feel that [Petitioner] should be afraid to proceed to trial without his testimony.
>
> * * *
>
> Your Honor . . . I'm not going to misrepresent to you that I do not feel that we can safely go to trial without someone like Doctor Barclay. I'm not going to tell you that, however, I think it would [be] enormously helpful for us, we had the court had in the previous trial . . . [an expert for the prosecution] testify and I believe the focus of the testimony was on delayed disclosure if I'm not . . . mistaken of children in the sexual abuse cases.

Following oral arguments and extensive inquiry by the trial court, the court denied [Petitioner's] request for funding, reasoning in part, that defendant failed to show that he could not safely proceed to trial without the proposed expert witnesses.

On appeal, [Petitioner] argues that the trial court abused its discretion in denying his motion and denied him due process and the right to present a defense. We disagree.

MCL 775.15 "authorizes payment for an expert witness, provided that an indigent defendant is able to show 'that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to trial ....'" *People v. Carnicom*, 272 Mich. App. 614, 617; 727 N.W.2d 399 (2006) (quoting MCL 775.15). "[T]o obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *Tanner*, 469 Mich. at 443 (quotation marks omitted). "It is not enough for the defendant to show a mere possibility of assistance from the requested expert." *Id.* "Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Id.* (quotation marks and citation omitted).

In this case, the trial court did not abuse its discretion in denying public funding for Dr. Howenstine. [Petitioner] did not show a nexus between the facts of this case and the need for Dr. Howenstine's testimony. *See Carnicom*, 272 Mich. App. at 619. Defense counsel indicated that Dr. Howenstine could potentially offer testimony about the methods that police used in procuring DNA samples; however, [Petitioner] did not show how this testimony would benefit the defense. There was no indication that Dr. Howenstine would have testified to errors in the police methodology. Indeed, [Petitioner's] trial strategy was to admit that his DNA was in Exam Room 1 because he previously had sex with his former wife in that room. Thus, [Petitioner] fails to indicate why Dr. Howenstine's testimony was necessary

to his defense at trial. Moreover, at the June 23, 2016 hearing, defense counsel agreed that [Petitioner] could safely proceed to trial without Dr. Howenstine's testimony. In short, the trial court did not abuse its discretion in denying public funding for Dr. Howenstine.

Similarly, the trial court did not abuse its discretion in denying [Petitioner's] request for funding for Dr. Barclay. [Petitioner] indicated that Dr. Barclay would testify about forensic interviews, disclosure process, and memory regarding child sexual abuse. However, [Petitioner] did not make any offer of proof to show that Dr. Barclay's testimony would be favorable to the defense such that [Petitioner] could not safely proceed to trial without the testimony. Instead, defense counsel showed a "mere possibility" that Dr. Barclay's testimony would benefit [Petitioner], which was insufficient to obtain funding under MCL 775.15. *See Tanner*, 496 Mich. at 443. Indeed, defense counsel agreed at the June 23, 2016 hearing that [Petitioner] could safely proceed to trial without Dr. Barclay's testimony. Furthermore, it was not clear how Dr. Barclay's testimony would have benefited [Petitioner] such that he could not safely proceed to trial. For example, defense counsel indicated that Dr. Barclay could testify about forensic interviews and "created memory," but this would not have addressed the evidence that the victim disclosed the abuse outside a forensic setting. In this case, similar to *Carnicom*, 272 Mich. App. at 618, [Petitioner] "did not make any indication or offer any evidence that expert testimony would likely benefit him." Instead, [Petitioner] showed a mere possibility that Dr. Barclay's testimony would benefit the defense. Therefore, the trial court did not abuse its discretion in denying [Petitioner's] request for funds for procuring Dr. Barclay as an expert.

In sum, the trial court did not abuse its discretion in denying [Petitioner's] motion for funding for the appointment of experts for his defense. Therefore, the trial court did not deny [Petitioner] due process or his right to present a defense. "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Toma*, 462 Mich. 281, 294; 613 N.W.2d 694 (2000) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

---

[1] Defense counsel initially requested funding for an unnamed third witness, but ultimately abandoned that request at a motion hearing.

*Kranz*, 2018 WL 2944190, at *4–5.

With respect to the provision of experts to indigent defendants, the Supreme Court has held

that the Fourteenth Amendment's Due Process Clause obligates states to provide indigent

defendants with psychiatric examinations and assistance in capital cases when the defendant has

made a preliminary showing that his or her sanity at the time of the offense is likely to be a significant factor. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). "The Supreme Court has left open how *Ake* should extend to experts other than psychiatrists . . ., and the Court's subsequent decisions have not created a 'clear or consistent path for courts to follow' when answering this due-process question." *Bergman v. Howard*, 54 F.4th 950 (6th Cir. 2022) (internal citation omitted).

In *Bergman*, the Sixth Circuit noted that "[u]ntil the [Supreme] Court provides more specific guidance on this topic, then, the law will remain 'unclear' and state courts will have 'broad discretion' to determine the circumstances when defendants have a right to state-funded non-psychiatric experts." *Id.* at *6. The Sixth Circuit further explained:

> Caselaw confirms this uncertainty. *See Carey v. Musladin*, 549 U.S. 70, 76, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). We have previously noted that circuit courts "have not reached consensus" on whether "the right recognized in [*Ake*]—to a psychiatrist's assistance in support of an insanity defense—extends to non-psychiatric experts as well." *Babick v. Berghuis*, 620 F.3d 571, 579 (6th Cir. 2010). Some courts have suggested, at least prior to *Medina*, that *Ake*'s rules apply in the same way to other experts. *See Little v. Armontrout*, 835 F.2d 1240, 1243–44 (8th Cir. 1987) (en banc). Yet other courts have held that defendants must satisfy additional requirements, such as the requirement to demonstrate that the expert evidence is "both critical to the conviction and subject to varying expert opinion." *United States v. Snarr*, 704 F.3d 368, 405 (5th Cir. 2013) (citation omitted). We have ourselves sent mixed messages on this issue. *Babick*, 620 F.3d at 579 (citing cases). Perhaps for this reason, we have repeatedly denied certificates of appealability for claims like Bergman's on the ground that the Supreme Court has not clearly established when a defendant has a right "to a state-paid expert witness other than for a psychiatrist's assistance in support of an insanity defense." *DeJonge v. Burton*, 2020 WL 2533574, at *5 (6th Cir. Apr. 20, 2020) (order); *Bullard v. Jackson*, 2018 WL 4735626, at *4 (6th Cir. Sept. 19, 2018) (order); *Davis v. Maclaren*, 2018 WL 4710071, at *3 (6th Cir. Apr. 3, 2018) (order); *McGowan v. Winn*, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) (order).

*Bergman*, 2022 WL 17576358, at *6; *see also Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) (refusing to extend *Ake* to appointments of criminal investigators, fingerprint experts, and ballistics experts). Thus, because the Supreme Court has not extended *Ake* to non-psychiatric experts, the court of appeals' rejection of Petitioner's claim cannot be contrary to or an

unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

### C.     Grounds III and IV—Expert Testimony Issues

Petitioner's third and fourth grounds for relief take issue with the admission of expert testimony. In his third ground for relief, Petitioner asserts that the trial court erred by admitting "expert testimony from an examining physician despite not having made any physical findings of sexual abuse to support the conclusion." (Pet., ECF No. 1, PageID.19.) In his fourth ground, Petitioner faults the trial court for allowing "a child abuse expert [to] testif[y] about delayed disclosure and recantation behaviors exhibited by children who have been victims of sexual abuse." (*Id.*) Petitioner suggests that the admission of this testimony served to improperly vouch for the complainant's truthfulness. (*Id.*)

Petitioner raised both claims in his Rule 6.500 motion, and the trial court denied them, stating:

> [Petitioner's] first argument with regards to this issue is that Dr. Brown opined that the complainant suffered from Probable Pediatric Sexual Abuse although there were no findings within the realm of medical capabilities or her expertise and that instead, her opinion was solely based on her own opinion that the complainant's account of the assaults were believable. In essence, [Petitioner] believes that the expert vouched for the veracity of the complainant in violation of *People v. Thorpe*, 504 Mich. 230 (2019). [Petitioner] believes that the court abused its discretion and that the resulting error is plain. It is alleged that the instant case was largely a credibility contest and that the most prejudicial aspect of the expert's testimony was that she vouched for the complainant's credibility. [Petitioner] also asserts that the Trial Court did not properly act as a gatekeeper in order to ensure that the expert testimony that was presented at the trial was reliable.

> [Petitioner] is raising this issue for the first time in this motion for reconsideration, as such MCR 6.508(D)(3) indicates that the court may not grant relief if the motion alleges grounds other than jurisdictional defects which could have been raised on appeal unless [Petitioner] demonstrates good cause or actual prejudice. The decision on whether to admit evidence is within the trial court's discretion. With regards to expert witnesses, the determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion. *People v. Unger*, 278 Mich. App. 210, 749 N.W.2d 272 (2008). Even when an

expert's testimony is relevant, it remains subject to the limits imposed by rule governing exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. *People v. McFarlane*, 325 Mich. App. 507, 926 N.W.2d 339 (2018).

With regards to [Petitioner's] claim that Dr. Brown opined that the complainant suffered from Probable Pediatric Sexual Abuse, an examining physician's diagnosis of child victim having suffered probable pediatric sexual abuse despite absence of physical evidence of trauma and based solely on what child victim told her, constitutes plain error which [a]ffects [Petitioner's] substantial rights. *People v. Thorpe*, 504 Mich. 230, 264–265, 934 N.W.2d 693, 711 (2019). Upon a review of the record in the instant case, there is nothing indicating that Sarah Brown stated that the minor child was the victim of probable pediatric sexual abuse. During the course of the trial, Dr. Brown was certified as an expert in child abuse pediatrics and was recognized as one of 7 Michigan Pediatricians who possessed this subspecialty. The expert testified that she did not make an invasive examination of the child and that the child struggled with constipation. It was then that the child made comments to the expert regarding the source of the injury. This was explored thoroughly in both direct and cross examination regarding sexual assault as well as the possible alternative causes of constipation. The expert was also questioned regarding the lack of physical findings and testimony was actually elicited by [Petitioner's] trial counsel regarding alternate explanations for the child's condition and also that the expert had no personal knowledge as to the cause of the child's reported ailments.

The expert also stated that there may not be physical evidence of abuse and that such things were not uncommon. The expert never testified that the child's statements were truthful. Instead, she relied upon the child's statements, her medical expertise, as well as various studies that she had read which were discussed throughout her testimony. For these reasons, the Court is not convinced that [Petitioner] has met his burden under MCR 6.508(D)(3) to show good cause or that any irregularity was offensive to the maintenance of sound judicial process. Accordingly, no abuse of discretion occurred in [Petitioner's] second trial and [Petitioner's] argument is without merit.

* * *

With regards to this issue, [Petitioner] argues that Barbara Welke's testimony inferred that the complainant showed signs of behavior consistent with child sexual abuse. [Petitioner] believes that recantation and delayed disclosure fall under the behavioral science field and are considered Child Sexual Abuse Syndrome which he believes the Prosecution diagnosed the complainant as having. [Petitioner] argues that this testimony was allowed without considering whether the behaviors of the complainant were an issue in this case. Further, [Petitioner] argues that the expert's testimony was not limited to background information and thus the expert became an advocate and vouched for the victim's credibility. . . .

22

In the instant case, Ms. Welke was certified as an expert in the process of disclosure and sexual abuse allegations by children. It is important to note that this expert explicitly stated that she had never interviewed the complainant in this case. The expert offered testimony as to the behavior of child abuse victims generally. Michigan Courts have stated that an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim. *People v. Dailey*, 2017 WL 1418103. A review of the record shows that the witness offered no judgment that the complainant's disclosures were consistent with a valid claim of sexual abuse and testified that delays in disclosures and recantations were not conclusive proof of a false claim of sexual abuse. Based upon the expert's lack of case-specific information, the fact that she never interviewed the complainant, as well as her offered testimony with regards to behaviors generally, it cannot be said that this expert vouched for the credibility of the witness in any reasonably objectionable way. Therefore, [Petitioner's] argument is without merit.

(ECF No. 9-13, PageID.3164–3167.)

"The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right." *Randolph v. Wolfenbarger*, No. 04-CV-73475, 2006 WL 1662885, at *5 (E.D. Mich. June 12, 2006) (citing *Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001); *see also Adesiji v. Minnesota*, 854 F.2d 299, 300 (8th Cir. 1988) (whether expert testimony regarding general patterns of credibility among children reporting sexual abuse was properly admissible was "essentially a matter of state law"). "Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue." *Randolph*, 2006 WL 1662885, at *5 (citing *United States ex. Rel. Ruddock v. Briley*, 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002)).

To the extent that Petitioner contends that the state court erred in qualifying Dr. Brown and Welke as experts, he cannot demonstrate that the admission of their testimony violated his due process rights. "The Supreme Court has never held that admitting evidence of questionable reliability against a criminal defendant without holding a *Daubert* hearing or similar procedure

violates due process." *Bojaj v. Berghuis*, 702 F. App'x 315, 320 (6th Cir. 2017).[3] "The Supreme

Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert*, and

screening evidence through *Daubert*'s standards is not constitutionally required." *Id.* at 321

(citation omitted); *see Smith v. Ross Corr. Inst.*, No. 16-3157, 2017 WL 3623939, at *1 (6th Cir.

July 3, 2017) ("The district court properly concluded that Smith was not entitled to relief on his

claim that the admission of the testimony violated *Daubert* because *Daubert* concerns only the

Federal Rules of Evidence and not state evidentiary rules."); *Thomas v. Jackson*, 2017 WL

2608753, at *7 (W.D. Mich. June 16, 2017) ("At no time has the Supreme Court held that *Daubert*

and *Kumho Tire* provide the standard for evaluating whether an admission of evidence violates

due process."). The trial court's determinations that Dr. Brown's and Welke's testimony was

admissible under the Michigan Rules of Evidence are, therefore, axiomatically correct on habeas

review.

Moreover, Petitioner's attempt to shoehorn these claims into ones that are cognizable on

habeas review is factually insupportable. As noted above, Petitioner argues that Dr. Brown and

Welke both vouched for the complainant's credibility. A review of the record, however, cannot

---

[3] In *Daubert*, the Supreme Court concluded that trial judges must ensure that admitted expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594. The Court identified several factors for consideration when evaluating scientific expert testimony, including: "the testability of the expert's hypotheses (whether they can be or have been tested, whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 593–94). *Daubert* was concerned with the admissibility of expert testimony pursuant to Federal Rule of Evidence 702. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction."). In Michigan, Rule 702 of the Michigan Rules of Evidence incorporates the standards set forth in *Daubert*. *See Gilbert v. Daimler Chrysler Corp.*, 470 Mich. 749, 781, 685 N.W.2d 391, 408 (2004).

lead to any conclusion other than that the trial court correctly noted that neither Dr. Brown nor Welke offered testimony regarding the truthfulness of the complainant's accusations and whether she was abused by Petitioner. Petitioner's suggestion that these expert witnesses usurped the province of the jury is simply incorrect.

Moreover, it is not clearly established federal law that expert testimony regarding the credibility of a complainant's accusations violates due process. The lower federal courts offer authority supporting the proposition that opinion testimony regarding the credibility of other witnesses is inappropriate. *See, e.g., United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014) (collecting federal circuit court authority); *Esch v. Cnty. of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017) (citing *Hill*); *Greenwell v. Boatwright*, 184 F.3d 492, 495–97 (6th Cir. 1999) (stating with regard to the expert's testimony "as to the validity of statements made by other witnesses . . .  we agree with the plaintiffs that the expert statements were inadmissible opinion testimony . . ."). But that authority is focused on whether the testimony is permissible under the Federal Rules of Evidence and, even with that non-constitutional focus, there is no Supreme Court authority stating that proposition. *Hill*, 749 F.3d at 1258 (relying on "the 'weight of authority from other circuits' . . . [in the] absen[ce of] a holding from. . . the Supreme Court").

Moreover, the fundamental premise of much of the lower court authority—that expert testimony regarding witness credibility is inappropriate because it invades the province of the jury[4]—has been called into question by the Supreme Court. In 1943, the Supreme Court interpreted

---

[4] That is also the premise of the state law limitation on such evidence. Michigan law holds that a witness may not provide an opinion on the credibility of another witness:

> It is "[t]he Anglo-Saxon tradition of criminal justice . . . [that] makes jurors the judges of the credibility of testimony offered by witnesses." *United States v. Bailey*, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980). Because it is the province of the jury to determine whether "a particular witness spoke the truth or fabricated a cock-and-bull story," *id*. at 414 415, 100 S. Ct. 624, it is improper for

the Federal rules of Evidence and considered the admissibility of expert testimony that was challenged on the basis that it "invaded the jury's province." *United States v. Johnson*, 319 U.S. 503, 519 (1943). The Supreme Court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

---

a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. *People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432 (1985). *See also People v. Peterson*, 450 Mich. 349, 352, 537 N.W.2d 857 (1995). Such comments have no probative value, *Buckey*, 424 Mich. at 17, 378 N.W.2d 432, because "they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Connecticut v. Taft*, 306 Conn. 749, 764, 51 A.3d 988 (2012) (citation and quotation marks omitted). *See also People v. Row*, 135 Mich. 505, 507, 98 N.W. 13 (1904) (explaining that opinion testimony regarding a complainant's veracity is not competent evidence). As a result, such statements are considered "superfluous" and are "inadmissible lay witness [ ] opinion on the believability of a [witness's] story" because the jury is "in just as good a position to evaluate the [witness's] testimony." *People v. Smith*, 425 Mich. 98, 109, 113, 387 N.W.2d 814 (1986).

*People v. Musser*, 494 Mich. 337, 835 N.W.2d 319, 327 (2013) (footnote omitted).

*Johnson*, 319 U.S. at 519–20. Federal Rule of Evidence 704(a)[5] expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Id*. Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that held that witnesses could not express opinions on ultimate issues. *See* Advisory Committee Notes, Fed. R. Evid. 704. In *Scheffer*, in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. 7 Wigmore §§ 1920, 1921; McCormick § 12. The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

Even if the Supreme Court concluded that the Federal Rules of Evidence did not allow expert testimony regarding witness credibility, that would not be sufficient to permit habeas relief. Where "the Supreme Court has addressed whether . . . testimony is permissible under the Federal Rules of Evidence . . . [but] it has not explicitly addressed the issue in constitutional terms . . . there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under the AEDPA." *Bugh*, 329 F.3d at 513.

Put simply, whether or not expert opinion testimony regarding witness credibility was properly admitted under state law, or even the Federal Rules of Evidence, is an entirely separate question from whether the evidence violates due process. In light of the United States Supreme Court's decision in *Johnson*, and the express disavowal of the notion that expert testimony on an "ultimate issue" is objectionable, the Court concludes that even if the expert testimony addressed

---

[5] The parallel Michigan Rule of Evidence is virtually identical. *See* Mich. R. Evid. 704.

the ultimate issue of the complainant's credibility, it would not violate the clearly established law regarding the limits of due process.

Because Petitioner cannot demonstrate that the admission of this expert testimony violated his due process rights, he cannot show that the trial court's rejection of these claims is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas grounds III and IV.

### D.        Ground V—Prosecutorial Misconduct

As his fifth ground for relief, Petitioner contends that the prosecutor "committed error where she knew of admissible evidence favorable to [Petitioner], but deliberately went to great lengths to make sure the jury would not hear the favorable evidence (there may be judge shopping here)." (Pet., ECF No. 1, PageID.20.) According to Petitioner, the prosecutor's actions violated his due process rights and denied him a "meaningful opportunity to present a complete defense." (*Id.*)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v.*

*Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

The trial court rejected Petitioner's claim in its opinion and order denying his Rule 6.500 motion, stating:

> [Petitioner] alleges that the Prosecution committed error and engaged in judge shopping when they went to great lengths to make sure the jury did not hear evidence favorable to [Petitioner]. According to [Petitioner], documents were received by the court and determined that they would have great importance though much of it was in the form of hearsay. [Petitioner's] theory of the case was that [J.L.], a witness for the Prosecution, was manipulating the complainant into alleging sexual abuse which was in line with her psychological evaluation of her manipulative behavior. [Petitioner] claims that he was barred from presenting testimony of this witness because of hearsay rules and opening the door to prior bad acts. [Petitioner] claims that [J.L.'s] psychological evaluation was important to show the nexus to support his defense. [Petitioner] had four witnesses who were going to testify as to what they heard [J.L.] say but instead, they were limited only to what they observed. [Petitioner] also states that Judge Cronin found that other documents related to [J.L.] were relevant since they showed she made false allegations in the past against [Petitioner]. [Petitioner] claims that all of the documents mentioned in Judge Cronin's 2012 opinion are relevant under MRE 401 and 402 and are critical to his Defense. [Petitioner] also claims that he attempted to

admit a psychological evaluation of himself and a polygraph of himself but was also denied these documents.

Where there is no allegation that prosecutorial misconduct violated a specific constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process of law. *People v. Blackmon*, 280 Mich. App. 253 (2008). Essentially, [Petitioner] is arguing that other acts evidence pursuant to MRE 404(b) should have been presented to the Court by the Prosecutor. [Petitioner] believes that this would have allowed him to explore his theory of the case. [Petitioner's] case theory was that [J.L.] used her hatred of [Petitioner] to influence the complainant to make false claims against him in the instant case. [Petitioner] hoped to discredit [J.L.] with hearsay statements which [Petitioner] believed supported his theory. [Petitioner's] prosecutorial misconduct argument was not specifically addressed in the Court of Appeals but the Court of Appeals did address the validity of [Petitioner's] theory of the case as described above. The Court of Appeals held that there was no evidence that the opinion testimony that [J.L.] hated [Petitioner] offered from other witnesses was rationally based on the perception of the witness. The Court accordingly held that such evidence would not have been helpful to the determination of a fact in issue at the trial. As such, it cannot be said that there was prosecutorial misconduct in the Prosecutor's refusal to seek to admit MRE 404(B) evidence through [J.L.].

With regards to [Petitioner's] claim that all of the documents in Judge Cronin's 2012 opinion were relevant to his defense, Judge Cronin did emphasize the possible value of impeachment through documents. It is however important to note that Judge Cronin did not explicitly state that these documents would be admissible at trial, he was simply noting the potential value of the information to combat the accusations of [Petitioner's] sexual misconduct towards children. [Petitioner] also mischaracterizes his 2003 psychological evaluation and it is a well settled matter of criminal law that the test applied to determine the admissibility of polygraph testimony is that there be testimony offered which would indicate that there is a general scientific recognition of such tests. *People v. Barbara*, 400 Mich. 352 (1977). [Petitioner] makes no argument concerning the general scientific recognition of polygraph tests. Further, even if [Petitioner] did advance such an argument, it is important to note that the results of a polygraph examination are not admissible at trial in criminal or civil case. *Sullivan v. State*, 328 Mich. App. 74 (2019). For these reasons, [Petitioner's] arguments . . . are without merit.

(ECF No. 9-13, PageID.3167–3169.)

In his § 2254 petition, Petitioner merely asserts his claim for relief and provides no explanation as to how the trial court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. As thoroughly discussed *supra*, the exclusion of testimony regarding any animosity J.L. had towards Petitioner did not violate Petitioner's due

process rights and did not violate his right to present a defense. Petitioner provides no evidence to support his speculative belief that the prosecution engaged in judge shopping to keep such evidence away from the jury. J.L. did not testify at Petitioner's retrial, providing no basis for the admission of J.L.'s psychological evaluation for impeachment purposes. Moreover, the refusal by a state to permit the admission of polygraph results does not violate a defendant's right to present a defense. *See Scheffer*, 523 U.S. at 301–12.

Because Petitioner has not demonstrated that any alleged prosecutorial misconduct occurred, much less that it "so infected the trial with unfairness" that he was denied due process, Petitioner cannot show that the trial court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground V.

### E.       Ground VI—Ineffective Assistance of Counsel

As his last ground for relief, Petitioner contends that trial counsel rendered ineffective assistance by failing to "produce relevant and admissible evidence . . . to establish the proper foundation for [Petitioner's] theory of the case." (Pet., ECF No. 1, PageID.20.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance claim in his Rule 6.500 motion, and the trial court applied the *Strickland* test to resolve Petitioner's claim. (ECF No. 9-13, PageID.3170–3171.) The trial court's application of *Strickland* eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the trial court applied the correct standard Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's ineffective assistance claim is an unreasonable application of *Strickland* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider whether the trial court reasonably applied the standard for Petitioner's claim of ineffective assistance of counsel.

Petitioner provides no explanation in his § 2254 petition about what evidence he believes trial counsel should have produced during trial. The Court, therefore, relies upon the explanation provided by the trial court in its opinion denying Petitioner's Rule 6.500 motion:

[Petitioner] claims that counsel was deficient due to their failure to submit the defense witness list by the pre-trial deadline. Specifically, [Petitioner] wished to call a receptionist to testify to the fact that the complainant wrote a recantation letter and wished to have Attorney John Watts notarize the letter. [Petitioner] believes that the prosecution was going to suggest that someone influenced the complainant to write the letter as they did in the first trial and that it was Defense Counsel's responsibility to investigate the issue and make the adversarial testing process work. The testimony of the secretary would have rebutted the prosecution's unreasonable inference. [Petitioner] also believes that another witness, Jack, would have explained that CPS had threatened the children and coerced the complainant to testify against [Petitioner]. He contends that counsel's failure to question Jack regarding these issues resulted in an unfair trial. [Petitioner] next argues that trial counsel failed to argue for hearsay exceptions to testimony which [Petitioner] believes was essential to his defense. [Petitioner] claims that he had witnesses who would have testified to [J.L.'s] statements of "ha, ha, I got you now" and this would have shown that they were consistent with the patter of false allegations of [J.L.] against [Petitioner]. In sum, [Petitioner's] main points of contention with respect to his inefficient assistance of counsel claim are that his counsel failed to submit a witness list, failed to pursue a motion in limine, failed to argue for a hearsay exception, and failed to secure expert witnesses.

(ECF No. 9-13, PageID.3170.) The Court will consider each of these claims of ineffective assistance below.

### 1. Witness List and Failure to Call Witnesses

Petitioner first faults counsel for failing to submit a witness list, which limited his ability to call certain witnesses. In his Rule 6.500 motion, Petitioner referenced that he wished to call attorney John Watts' receptionist, Marissa McNeely, to testify that the complainant had voluntarily written a recantation letter and that no one had coached the complainant to do so. (ECF No. 9-14, PageID.3329.) Petitioner also referenced another witness, Jack, who Petitioner contends was "willing to testify that the counselors that CPS assigned [to the children] were threatening them that they would never see home if they didn't testify against [Petitioner] and told [the complainant] that if any children get hurt in the future it would be her fault." (*Id.*, PageID.3329–3330.)

The trial court denied this claim, stating:

[Petitioner's] original trial counsel was Emily Green[,] who filed a motion to withdraw which was granted in November 2015. This attorney had filed a witness

34

list in 2015 and the newly appointed Defense Attorney Suzanne Klein[] intended
to restrict defense testimony to the witnesses on the list filed by Ms. Green and thus
did not file an amended list. Ms. Klein did indicate at a July 6, 2016 hearing that
she may bring a motion to amend the witness list and such a motion was filed a day
later. This amended witness list only sought to add Ms. McNeely but Mr. Watts
was also listed as a witness and it is unlikely that Ms. McNeely would have had any
information that Mr. Watts did not already possess. It is also important to note that
the complainant herself testified at the trial and indicated that she wrote the
recantation letter willingly, negating the need for [Petitioner] to call witnesses to
testify to this same point. [Petitioner's] argument on this issue is without merit.

(ECF No. 9-13, PageID.3171.)

As an initial matter, Petitioner has not presented any affidavits from any purported
witnesses to support his ineffective assistance claim. Such a speculative claim does not entitle him
to habeas relief because Petitioner has failed to provide a "basis on which to conclude that failure
to call a possibly favorable witness amounts to constitutionally deficient performance." *Clark v.
Waller*, 490 F.3d 551, 558 (6th Cir. 2007). Although the trial court did not explicitly address
Petitioner's argument about "Jack," Petitioner has wholly failed to provide an affidavit from
"Jack" setting forth that he was available and willing to testify at trial. Petitioner's vague reference
to the purported testimony "Jack" would have given does not suffice to establish that counsel was
ineffective for failing to add him to the witness list and call him at trial.

Moreover, with respect to Petitioner's assertion that counsel failed to amend the witness
list in time to add Marissa McNeely, the complainant testified at trial about the recantation letter
at issue. The complainant read the letter, which stated that she made up the accusations against
Petitioner because she was mad at him for "yelling at my brother Jack." (Trial Tr. III, ECF No. 9-
7, PageID.2464.) The complainant testified that she wrote this letter because she "felt like my issue
became everybody's issue and I was told that if I were to write something along these lines that
everything would go away and I wouldn't go into—like I wouldn't get taken away from my
family[.]" (*Id.*, PageID.2465.) She testified that no one "specifically [told her she] had to write this

or say these words." (*Id.*) The complainant reiterated on cross-examination that no one told her that she had to write the letter. (*Id.*, PageID.2478.) Petitioner provides no evidence, much less clear and convincing evidence, to rebut the trial court's determination that there was no need for Marissa McNeely to testify as to the voluntary nature of the recantation letter because the complainant herself had provided that testimony. Counsel cannot be deemed ineffective for failing to present cumulative testimony. *See Robins v. Fortner*, 698 F.3d 317, 330 (6th Cir. 2012).

In short, Petitioner has not shown that the trial court's rejection of this claim of ineffective assistance is an unreasonable application of *Strickland*. Accordingly, he is not entitled to habeas relief with respect to this issue.

### 2.   Failure to Pursue Motion in Limine and Argue for Hearsay Exceptions

In his Rule 6.500 motion, Petitioner also asserted that counsel was ineffective for failing to file a motion in limine "for admission of all of the defense documents (previously ruled admissible in the appeal) that were critical for establishing a foundation for [Petitioner's] defense strategy." (ECF No. 9-14, PageID.3325.) The documents in question were those discussed at length during the *Ginther* hearing. Petitioner also faulted counsel for not eliciting testimony from witnesses regarding "events surrounding the initial allegations of [the complainant] via [J.L.], which included the statement: 'Ha, Ha, I got you now!', and other similar statements." (*Id.*, PageID.3326.)

The trial court rejected Petitioner's claim, stating:

[Petitioner's] argument of ineffective assistance of counsel due to failure to argue a hearsay exception is similarly without merit. [Petitioner] alleges that he suffered ineffective assistance of counsel where counsel did not argue for hearsay exceptions in order to admit certain documents that the trial court had found relevant for impeachment of other acts evidence. The Court of Appeals has already addressed this issue and clearly articulated why the exclusion of the items did not constitute error. Furthermore, [Petitioner] is again attempting to argue that statements made by [J.L.] should have been admitted so that he could rebut them and show the animosity she had for him. As stated by the Court of Appeals, there is no correlation

36

between [Petitioner's] poor relationship with [J.L.] and the victim, and testimony
on this issue is totally lacking in relevance and is of a speculative nature.

(ECF No. 9-13, PageID.3172.)

The Michigan Court of Appeals' determination that the evidence regarding the relationship

between Petitioner and the victim's sister was inadmissible forecloses this ineffective assistance

claim. The court of appeals determined that evidence regarding the relationship between Petitioner

and the victim's sister was irrelevant. *Kranz*, 2018 WL 2944190, at *2. Even if counsel could have

overcome the hearsay bar, the evidence would still be irrelevant under state law. That

determination binds this Court. *See Wainwright*, 464 U.S. at 84 (1983); *see also Bradshaw*, 546

U.S. at 76. In that circumstance, Petitioner cannot show that counsel's failure to overcome the

hearsay bar prejudiced Petitioner in any way and, accordingly, he has failed to demonstrate that

the trial court's rejection of this claim of ineffective assistance is an unreasonable application of

*Strickland*. Accordingly, he is not entitled to habeas relief with respect to this issue.

### 3.       Failure to Secure Expert Witnesses

Petitioner's last claim of ineffective assistance is that counsel was ineffective for failing to

retain experts to testify on behalf of Petitioner. In his Rule 6.500 motion, Petitioner referenced

counsel's failure to obtain Dr. Andrew Barclay and Dr. Julie Howenstein as witnesses. (ECF No.

9-14, PageID.3326.) The trial court rejected Petitioner's claim, stating:

> Finally with regards to [Petitioner's] arguments concerning the retention of expert
> witnesses, Judge Cronin did make a tentative finding that experts proposed by
> [Petitioner] were important to the Defense. He ordered the Defense to make a
> showing of the rate of pay, number of hours, and to provide information concerning
> the relevance of the proposed testimony. During the June 23, 2016 hearing in the
> trial court, the Defense counsel indicated that two of their proposed experts were
> dispensable and that they instead sought to obtain a third expert. Judge Cronin
> ultimately denied the request for funds based upon the lack of a nexus between the
> request and the demand of the case. The Court of Appeals has also addressed a
> similar question in their review of this case when they held that the trial court did
> not abuse its discretion in not allowing funding for expert testimony since
> [Petitioner's] proposed experts were unnecessary under the facts of [the] instant

case. It was a matter of trial counsel's judgment not to present expert testimony at [Petitioner's] second trial and it cannot be said that counsel's performance in this regard fell below an objective standard of reasonableness and so prejudiced [Petitioner].

(*Id.*), PageID.3172–3173.)

"*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. Moreover, this Court has noted that the "battle of expert testimony regarding delayed disclosure plays out in many CSC-I cases." *Mosher v. Burt*, No. 1:20-cv-33, 2021 WL 2926059, at *12 (W.D. Mich. May 3, 2021) (citing *Howell v. Parish*, No. 1:19-cv-446, 2021 WL 1169846, at *9–10 (W.D. Mich. Mar. 4, 2021)). This battle often involves a conflict between testimony that delayed disclosure evidences fabrication and testimony that delayed disclosure is common and "follows from the difficulty inherent in disclosing sensitive sexual acts." *Howell*, 2021 WL 1169846, at *9. "The relatively recent social media publication of first-hand accounts from thousands of victims revealing pervasive sexual harassment and abuse, typically never reported at the time it occurred . . ., suggests that the common experience of jurors might be enough to help them evaluate the credibility of delayed disclosures without expert assistance." *Mosher*, 2021 WL 2926059, at *12.

As discussed *supra*, on direct appeal, the court of appeals concluded that the trial court did not violate due process by denying funding for Petitioner's proposed experts. *See Kranz*, 2018 WL 2944190, at *5. Counsel proffered that Dr. Howenstein could testify as to methods used by the police to procure DNA samples but given that Petitioner admitted that his DNA was in Exam Room 1 because had engaged in sexual relations within his former wife in that room, Petitioner failed to demonstrate how such testimony would benefit his defense in any way. *See id.* Moreover, while Dr. Barclay could testify about forensic interviews and memory regarding child sexual abuse

disclosure, there was only a possibility that such testimony could benefit Petitioner because the complainant did not disclose the abuse in a forensic setting. *See id.*

As noted by the Sixth Circuit, "the Supreme Court has held that '[i]n many instances *cross-examination will be sufficient* to expose defects in an expert's presentation.'" *Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Harrington*, 562 U.S. at 111). Here, the record reflects that Petitioner's counsel thoroughly cross-examined both of the expert witnesses presented by the prosecution. During her cross-examination of Dr. Brown, defense counsel stressed that Dr. Brown had not noted any sorts of genital injuries that pre-pubertal children are prone to in abuse situations when she examined the complainant. (Trial Tr. II, ECF No. 9-6, PageID.2317.) Dr. Brown also noted that she did not examine the complainant until a month after the complainant's last contact with Petitioner. (*Id.*, PageID.2324.)

During her cross-examination of Barbara Welke, defense counsel had Welke admit that she had not reviewed any reports prior to her testimony. (*Id.*, PageID.2352.) Welke also admitted that studies regarding recantation and child sexual abuse victims suggest that "[t]he percentages of recantation . . . have varied a lot." (*Id.*, PageID.2354.) Welke admitted that she had been involved in cases where she thought a child was not being completely forthright in the interview, but that "most of the time when [she felt] like a child [was not] being honest with [her] it's that they're omitting information rather than fabricating information." (*Id.*, PageID.2358.)

Here, counsel's strategy was to explain the presence of Petitioner's DNA in the carpet samples from Exam Room 1 by presenting testimony from Petitioner and his former wife that they had engaged in sexual relations in that room and by suggesting that the complainant had fabricated the allegations of abuse. Given this focus—and the absence of any indication that the methodology police used to collect DNA samples from Exam Room 1 was flawed—counsel reasonably chose

39

to forego Dr. Howenstein's testimony. Moreover, because the complainant did not disclose the abuse in a forensic setting, counsel reasonably chose to forego testimony from Dr. Barclay and instead focused on cross-examining Welke.

Petitioner fails to present any evidence, much less clear and convincing evidence, to refute the trial court's conclusion that counsel's decision to not present expert testimony was reasonable and did not prejudice his defense in any way. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005); *see also Mosher*, 2021 WL 2926059, at *11–12 (rejecting the petitioner's claim of ineffective assistance premised upon counsel's failure to call an expert to counter testimony provided by the prosecution's expert (Welke) regarding delayed disclosure). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable. Petitioner, therefore, is not entitled to habeas relief with respect to this assertion of ineffective assistance.

In sum, Petitioner has failed to show that the trial court's rejection of his claims of ineffective assistance of trial counsel is an unreasonable application of *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground VI.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated: November 9, 2023                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE